UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JANICE JACKSON,

    Plaintiff,

v.

BRANCH BANKING AND TRUST
COMPANY,
BRANCH BANKING AND TRUST
COMPANY REGISTERED AGENT,
SAMUEL I. WHITE, P.C., and
WILLIAM ADAM WHITE,

    Defendants.

Civil Action No. TDC-14-3155

**MEMORANDUM OPINION**

On October 7, 2015, Plaintiff Janice Jackson filed a Complaint *pro se* against Defendants Branch Banking and Trust Company ("BB&T"), BB&T Registered Agent, Samuel I. White, P.C., and William Adam White (collectively, "Defendants"). ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss the Complaint, ECF No. 8, to which Jackson has responded with her Objection to Defendant's Motion to Dismiss, ECF No. 12. The Court has reviewed the pleadings and briefs, and no hearing is necessary. *See* D. Md. Local R. 105.6. For the following reasons, Defendants' Motion to Dismiss is GRANTED.

**BACKGROUND**

On March 9, 2005, Janice and Mandel Jackson purchased a residence at 5532 Keyworth Court, Capitol Heights, Maryland (the "Property") and executed a deed of trust (the "Deed") and

a promissory note ("Note") for $153,340.[1] Although Liberty Mortgage Corporation lent the money to the Jacksons, the Deed listed Mortgage Electronic Registration Systems, Inc. ("MERS") as the sole beneficiary. The Deed states that the "Note or a partial interest in the Note (together with [the Deed]) can be sold one or more times without prior notice to Borrower." Compl. Ex. B at 11. Jackson also initialed and signed the page of the Note containing the statement, "I understand that the Lender may transfer this Note." Mot. Dismiss Ex. D, at 1. Subsequently, the Note was transferred to BB&T, as evinced by stamps and signatures on the last page of the Note.

On October 14, 2011, Jackson filed a Chapter 13 Voluntary Petition for bankruptcy, which was converted to a Chapter 7 Petition on December 8, 2011 and was closed on March 12, 2012. *In re Jackson*, Final Decree, No. 11-30506-PM (Bankr. D. Md. Mar. 12, 2012). On July 8, 2013, BB&T brought a foreclosure action on the Property in the Circuit Court for Prince George's County. When BB&T filed the foreclosure action, Jackson moved to reopen her bankruptcy case to challenge BB&T's ability to foreclose on the Property. *In re Jackson*, Order Granting Motion to Reopen Chapter 7 Case to File for Contempt for Violation of the Discharge Injunction Against Creditors, No. 11-30506-PM (Bankr. D. Md. Sept. 25, 2013). Ultimately, the United States Bankruptcy Court for the District of Maryland denied Jackson's claims against

---

[1] For purposes of the Motion to Dismiss, the Court considers the Deed, which was attached to the Complaint, and the Note, which was attached to the Motion, because they are integral to the Complaint and are of undisputed authenticity. *See Philips v. Pitt County Mem'l Hosp.*, 372 F.3d 176, 180 (4th Cir. 2009). The Court also takes judicial notice of court proceedings. *See* Fed. R. Evid. 201(b)(2).

BB&T. *In re Jackson*, Order, No. 11-30506-PM (Bankr. D. Md. Dec. 30, 2013). Jackson then filed her Complaint in this case.[2]

The Court reads Jackson's Complaint to allege that BB&T cannot enforce the Note because it acquired it through improper and fraudulent means. In particular, she appears to allege that because (1) the Deed and the Note are held by separate entities. and (2) BB&T did not physically receive, and does not physically have possession of, the original Note, it may not foreclose on the Property. The Court also reads Jackson's Complaint to allege fraud based on the theory that BB&T's filing of claims against Jackson, when it did not have legal possession of the Note, constituted a "false claim." Compl. ¶¶ 10, 14. Finally, Jackson alleges that by enforcing the Note, BB&T violated the United States and Maryland Constitutions, as well as several statutes and regulations, including the Coinage Act of 1792, ch. 16, 1 Stat. 246; a Joint Resolution of Congress of June 5, 1933, ch. 48, 48 Stat. 112 ("To assure uniform value to the coins and currencies of the United States."); 28 U.S.C. § 1604 (2012) (Immunity of Foreign State from Jurisdiction); 28 U.S.C. § 1330 (2012) (Actions Against Foreign States); 22 C.F.R. § 93.1 (2015) (Service Through the Diplomatic Channel); and 22 C.F.R. § 93.2 (2015) (Notice of Suit). As a remedy for these alleged violations, Jackson seeks four times the value of the property, $10 million in punitive damages, free and clear title to the Property, and destruction of the Deed. Defendants move to dismiss the Complaint because, in their estimation, Jackson fails to plead facts sufficient to state a claim for relief as to any of these causes of action. *See* Fed. R. Civ. P. 12(b)(6).

---

[2] Although Jackson did not list a basis of jurisdiction in her Civil Cover Sheet or Complaint, she claims violations of several federal statutes, thus establishing federal question jurisdiction. 28 U.S.C. § 1331 (2012). In addition, the Complaint identifies Jackson's address in Maryland, lists Virginia and North Carolina addresses for Defendants, and seeks damages greater than $75,000, thus indicating that there may be diversity jurisdiction as well. *See* 28 U.S.C. § 1332.

## DISCUSSION

### I. Legal Standard

To defeat a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Complaints filed by *pro se* plaintiffs are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Id.*; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In evaluating the sufficiency of the plaintiff's claims, courts examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson County*, 407 F.3d 266, 268 (4th Cir. 2005).

In addition, Jackson's fraud claim is subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Under this standard, Jackson must allege "the time, place, and contents" of the fraudulent representation, the identity of the person who made the misrepresentation, and what the alleged perpetrator of fraud "obtained thereby." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

### II. Separation of the Deed from the Note

Jackson raises several claims related to the enforceability of the Note, which the Court will address in turn. Jackson's primary claim appears to be that because the Deed of Trust and

4

the Note are now held by separate entities, there is no legal right for BB&T, which purports to now hold the Note, to foreclose on the Property. In Maryland, however, the right to enforce the deed of trust remains with the note even if the note is transferred. *See Deutsche Bank Nat. Trust Co. v. Brock*, 63 A.3d 40, 48 (Md. 2013) (observing that "once the note is transferred, the right to enforce the deed of trust follows") (internal quotation marks and citation omitted). Courts in this district have therefore repeatedly rejected the argument that separation of the deed from the note invalidates a mortgage, sometimes referred to as the "separation theory." *See McNeil v. Bank of America*, No. DKC-13-2162, 2014 WL 1831115, at *3 (D. Md. May 7, 2014) (observing that "courts in this district have rejected this 'separation theory.'"); *Somarriba v. Greenpoint Mortg. Funding, Inc.*, No. 13-CV-072-RWT, 2013 WL 5308286, at *3 (D. Md. Sept. 19, 2013); *Reed v. PNC Mortg.*, No. AW-13-1536, 2013 WL 3364372, at *3 (D. Md. July 2, 2013) ("Courts in this district have rejected similar claims based on the alleged separation of a note from the deed of trust."); *Parker v. Deutsche Bank Nat'l Trust Co.*, No. WMN-12-3358, 2013 WL 1390004, at *3 (D. Md. Apr. 3, 2013) (rejecting the separation theory because the "rights under the Deed of Trust follow the Note"). Therefore, in alleging that BB&T cannot foreclose under this separation theory, Jackson does not state a plausible claim for relief.

### III.    Transfer of the Note

Next, Jackson appears to object to the manner in which BB&T acquired the Note, suggesting that promissory notes may be acquired only by physical transfer. In particular, Jackson argues that BB&T cannot enforce the Note because "there is no record of a lien registered with the Secretary of State," notes in MERS's possession are "photographed and then destroyed," and BB&T does not have possession of the original Note. *See* Compl. ¶¶ 4, 9.

5

Here, the recorded Deed explicitly listed MERS, an entity that electronically tracks ownership interests in residential mortgages, along with its successors and assigns, as the beneficiaries and nominees for the lender, Liberty Mortgage Corporation. MERS operates a system of recordation, which tracks ownership interests in residential mortgages in an electronic database. *See Anderson v. Burson*, 35 A.3d 452, 455–56 (Md. 2011). Courts reviewing challenges to this electronic system of transferring rights "have found that the system of recordation is proper and assignments made through that system are valid." *Suss v. JP Morgan Chase Bank, N.A.*, No. WMN-09-1627, 2010 WL 2733097, at *5 (D. Md. July 9, 2010) (collecting cases); *see also McNeil*, 2014 WL 1831115, at *5; *Parker*, 2013 WL 1390004, at *3.

Moreover, Jackson's claim that BB&T only has enforceable rights if it can produce the original Note is incorrect. Courts in this district have repeatedly rejected this "show me the note" argument. *See Jones v. Bank of N.Y. Mellon*, No. DKC-13-3005, 2014 WL 3778685, at *4 (D. Md. Jul. 29, 2014); *Harris v. Household Finance Corp.*, RWT-14-606, 2014 WL 3571981, at *2 (D. Md. Jul. 18, 2014) (explaining that "there is no recognizable claim" that a mortgagor must "produce 'wet ink' signature documents" in order for a mortgage to be valid). Thus, Jackson has not stated a valid claim relating to the transfer or possession of the Note.

## IV. Fraud

Jackson also alleges fraud, specifically that BB&T fraudulently acquired and enforced the Note, arguing that the "defendant(s) are operating under deception to deprive me of my property by trying to obtain Title under fraudulent activity." Compl. 2 (citing Joint Resolution of June 5, 1933, ch. 48, 48 Stat. 112). To allege fraud in Maryland, a plaintiff must demonstrate that (1) the defendant made a false representation to the plaintiff; (2) the defendant either knew the misrepresentation was false or made the misrepresentation with "reckless indifference to its

6

truth"; (3) the defendant made the misrepresentation for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff, as a result of the misrepresentation, suffered some compensable injury. *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994); *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d. 666, 673 (D. Md. 2013). Plaintiffs who assert fraud claims in federal court must plead with particularity. *See* Fed. R. Civ. P. 9(b); *Harrison*, 176 F.3d at 784.

As a threshold matter, Jackson fails to plead her fraud claim with particularity. She does not state the time, place, or contents of the false representations, *Harrison*, 176 F.3d at 784, let alone the substantive requirements for fraud under Maryland law, *Nails*, 639 A.2d at 668. Instead, Jackson states only generally that the defendants committed "fraudulent activity." Compl. 2. That conclusory statement is insufficient to meet the heightened pleading standard for fraud under Rule 9(b).

Moreover, Jackson's fraud claim cannot succeed because it relies on the same faulty legal theory underlying her other claims. While the Note's transfer is admittedly complicated, its complexity does not amount to invalidity, let alone false representation. As discussed above, BB&T does not lose its rights simply because the Note was separated from the Deed, the Note was transferred through MERS's electronic database, or BB&T does not have the original Note. Therefore, Jackson's claim that BB&T is defrauding her by seeking to enforce the Note necessarily fails, and the fraud claim is appropriately dismissed with prejudice. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (holding that a district court may deny leave to amend as futile if "the proposed amended complaint fails to satisfy the requirements of the federal rules") (internal quotation marks omitted)).

## V. Other Claims

Jackson also claims violations of the United States Constitution, Article I, Section 10 of the Maryland Constitution (qualifications of officers), the Coinage Act of 1792, and the Joint Resolution of June 5, 1933, ch. 48, 48 Stat. 112, because Defendants are seeking payment from her in federal reserve notes rather than coinage. None of these provisions provide a plausible basis to invalidate the Note or to provide relief from Jackson's mortgage obligations.

Finally, Jackson claims that she is immune from suit because she "was being sued in the corporate capacity." Compl. ¶¶ 12–13. Her cited authority, however, bears no relationship to her status or the issues in this case. 28 U.S.C. § 1604 (providing immunity from suit to foreign states, subject to exceptions); 28 U.S.C. § 1330 (addressing personal jurisdiction over foreign states); 22 C.F.R. §§ 93.1–93.2 (addressing guidelines for providing service upon a foreign state). Thus, Jackson fails to state a claim on any of these theories.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED. Jackson's Complaint is DISMISSED WITH PREJUDICE. A separate Order follows.

Date: October 13, 2015

THEODORE D. CHUANG
United States District Judge